## UNITED STATES

v.

## William H. LEACH.

## Crim. No. 121-62.

United States District Court
District of Columbia.

May 14, 1963.

Arnold H. Leibowitz, Washington, D. C., Max M. Kampelman, Washington, D. C., on brief, for appellant.

David C. Acheson, U. S. Atty., Robert D. Devlin, Asst. U. S. Atty., for United States.

CURRAN, District Judge.

The defendant in the above entitled cause was convicted of robbery. On appeal the Court of Appeals affirmed but a majority of the panel, with Judge Wright writing the opinion and Chief Judge Bazelon concurring, remanded the case to the District Court for a reconsideration of the sentence. Judge Bastian dissented to the remand, stating that there was no reversible error to affect the verdict.

Judge Wright states:

"There is no indication here that the court, in imposing as it did the maximum penalty provided by the statute, made use of any of the aids to sentencing placed at its disposal by the Congress of the United States. Under the circumstances, we think the case should be remanded to the District Court for reconsideration of the sentence."

I do not interpret this language as a command to the District Court to refer this case to the Legal Psychiatric Services.

Judge Wright, himself, says:

"Rule 32(c) of the Federal Rules of Criminal Procedure provides that a probation officer 'shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation *unless the court otherwise directs.*'" (Emphasis supplied).

There is nothing in the record to indicate that this court directed that a presentence investigation should not be made by a probation officer. As a matter of fact, the Probation Office filed a full and complete report prior to sentence.

The Probation Office reported:

"Reports from the various institutions that this defendant has been confined in have indicated that he has made a satisfactory adjustment with the exception of the Minnesota State Prison which indicated that he was an extreme problem, refusing to work, causing disturbances and attempting to instigate a riot."

The report indicates that the defendant was in the Minnesota State Prison in the 1930's. The probation report also states:

"The classification record of the defendant in the New Jersey State Prison compiled in 1950 found him to be above average mental ability (IQ 115). The psychiatric diagnosis made of him on July 6, 1953 was 'psychopathic personality, unstable, unreliable, recidivistic, anti-social and poor prognosis for good adjustment if released.'"

These diagnoses were made nine years and twelve years prior to the imposition of sentence. At no time has the defendant been admitted to a mental institution. The Probation Officer also states:

"He presents a classical picture of the psychopathic offender * * *."

This, of course, is merely the opinion of a probation officer and not one made by a psychiatrist or a psychologist. Despite his opinion, the Probation Officer did not see fit to refer the defendant to the Legal Psychiatric Services which he, himself, had the power to do under Title 24, § 106 of the District of Columbia Code. The Probation Officer recommended that probation be denied and stated "perhaps a maximum term in confinement is indicated."

Counsel for the defendant at the time of sentence had this to say:

"* * * I discussed with Mr. Leach his entire background. I obtained his history and obtained it with the purpose of determining whether or not there was sufficient ground for establishing a prima facie case for mental observation. At that time, that point, Mr. Leach was not interested in filing a motion for mental observation. I told him to consider it and I would consider it, and discuss it with a psychologist to determine whether there was a prima facie showing. There was no prima facie showing. The only thing there was, was recidivism * * *."

As a matter of fact, Judge Wright, in Williams v. United States, U.S.App.D.C., 312 F.2d 862 (1962) said:

"The history shows that Williams is a confirmed criminal, a 'recidivist' in the parlance of the penologists. But that fact alone does not require that he be committed to a hospital rather than the penitentiary. *A long criminal record does not excuse crime.*" (Emphasis supplied).

There was not one scintilla of competent evidence submitted to this court prior to trial, during the trial, or after the trial, to indicate that this defendant was suffering from a mental disease or defect. I am not of the belief that because a man has committed a number of crimes of violence this is evidence of insanity.

■ If the Congress of the United States had intended that the trial court automatically refer a case to the legal Psychiatric Services prior to sentence, it would have said so. It therefore follows that whether or not a trial judge refers a matter to the Probation Office or the Legal Psychiatric Services is purely a matter of discretion.

Judge Wright, in Williams v. United States, supra, also made this statement:

"We conclude that appellant's trial was free of prejudicial error and that his conviction must be affirmed. In so doing, however, we do not foreclose the possibility of a further inquiry, by the proper authorities, whether his sentence should be served in the penitentiary or a mental hospital. Indeed, under the general law, 18 U.S.C. § 4241, and the District of Columbia Code, § 24–302, any prisoner found to be 'mentally ill' may be transferred to a mental hospital. It may well be that Williams is a proper candidate for such action."

The defendant Leach, in this case, has the same rights as Williams.

Judge Wright stated that this court imposed the maximum penalty provided by statute. The District of Columbia Code of Laws, Title 22, § 2901, provides that any person convicted of robbery shall suffer imprisonment for not less than six months, nor more than fifteen years. However, § 3202 of Title 22 of the District of Columbia Code provides as follows:

"Committing crime when armed —Added punishment. If any person shall commit a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm, he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than five years; upon a second conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment

for a term of not more than ten years; upon a third conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than fifteen years; upon a fourth or subsequent conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for an additional period of not more than thirty years. (July 8, 1932, 47 Stat. 650, ch. 465, § 2)."

This is the defendant's third conviction for armed robbery. It follows, therefore, that this court did not impose upon the defendant Leach the maximum sentence as provided by law. These two crimes were not the defendant's only crimes for, at the time of sentence, counsel for the defendant stated:

"At the age of 19 this man was convicted for robbery, was sentenced to five to forty years in Stillwater Prison. He spent almost nine years in that prison, was in solitary confinement for a period of one year, was released. After a period of 30 days, was again arrested and convicted of robbery, and spent a period of seven and a half years in prison. After he had been convicted for robbery he was held and tried for violation of the Dyer Act, served a three year sentence post-dated. He was transferred to Atlanta after serving seven and a half years on the robbery conviction. At the point of where he finished the three year sentence at Atlanta he was then held upon a detainer for auto theft in New Jersey involving the same automobile, and was sentenced seven to ten years in New Jersey. He served four years and seven months of that sentence. He got out, and was out for a period of about thirty-five days * * *."

■ The defendant did not deny this statement and when asked by the court how many armed robberies he had com-

mitted, he answered "I wouldn't be certain of the number." These two statements constitute a waiver and dispense with the necessity of proof of prior felony convictions.

There is one thing remaining which merits comment. Judge Wright, in his opinion said:

"In the act of sentencing the judge approaches the attribute of the Almighty * * *."

The responsibility of disposing of a man's liberty is not a light one—but to relate it as an approach to "the attribute of the Almighty" would appear to be engaging in sheer metaphor. Certainly no human being in the performance of any finite act, whether he be trial judge, appellate judge or justice of our court of last resort, can, or indeed should in any way equate it to any attribute of the Deity. There is no question but that the sentencing function of the trial judge is a most serious one and he must carefully determine the penalty which will be imposed upon the offender for his crime. However, Judge Wright states:

"But more importantly, for the offender and for society, in sentencing, the judge must consider a program of rehabilitation designed to preclude, so far as current learning can furnish a guide, a repetition of the crime."

This court agrees that rehabilitation is a factor which a judge should consider in imposing a sentence but it is not the only factor, for the Congress of the United States has imposed sanctions upon those who commit crimes. It appears to me that there are those whose philosophy is to the effect that sanctions should be ignored and the only factor in sentencing is rehabilitation. Certainly every judge realizes that the rights of society should be considered together with the rights of the accused.

This court has carefully reconsidered the sentence imposed, as suggested by the appellate court. In light of the defendant's prior record, the Probation Officer's report and recommendation and, in view of the fact that the defendant was convicted of a very serious crime; and further, in view of the fact that there was no competent evidence of any kind or character immediately prior to, during, or after the trial, or prior to the imposition of sentence, that the defendant Leach was suffering from any mental illness, the sentence heretofore imposed by this court will not be disturbed.